# Richmond.

## PATTERSON v. BINGHAM.

### March 19, 1903.

1. MARRIAGE AND DIVORCE—*Statutory Marriage of Colored Persons—Abandonment of Intent to Marry.*—The mere fact that prior to February 27, 1866, a colored man and a colored woman cohabited together, and contemplated occupying toward each other the relation of husband and wife, does not render legitimate, within the meaning of section 2227 of the Code, the issue of such intercourse recognized by the man to be his, where it appears that the parties afterwards, and before the date last mentioned, mutually abandoned that purpose, and each married another person. The voluntary abandonment by the parties of the purpose to marry is not within the meaning of the words "any other cause" used in that section. The Legislature did not intend to legitimate the fruits of mere concubinage.

Error to a judgment of the Circuit Court of King and Queen county, rendered November 14, 1901, in an action of ejectment, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*J. N. Stubbs,* for the plaintiff in error.

*H. I. Lewis,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

This is an action of ejectment brought by Margaret Bingham against John Patterson to recover possession of seventeen (17) acres of land. After the testimony had been introduced, the

defendant demurred to the plaintiff's evidence, a verdict was rendered subject to the demurrer, the court gave judgment for the plaintiff, and this judgment is now before us for review.

William Spencer was born and lived a negro slave until he was emancipated by the adoption of the thirteenth amendment to the Constitution of the United States. While in slavery he cohabited with Sarah Ann, a colored woman, who was also a slave, and was about to be married to her when he was forbidden to do so by his master. He afterwards married Lucy Spencer, but had no child by her. Sarah Ann, after her marriage with William Spencer was prohibited, married John Larramore, and three months thereafter gave birth to Margaret Bingham, the plaintiff, who was recognized by William Spencer to be his child. Sarah Ann, after marriage to John Larramore, gave birth to a number of children, and died some time after the war.

The land in controversy was purchased of William H. Bancroft by William Spencer, and at his death remained in the possession of Lucy Spencer, his widow, who afterwards intermarried with John Patterson, the defendant in the Circuit Court.

If Margaret Bingham was the lawful heir of William Spencer, the decision of the Circuit Court was correct, and the solution of that question depends upon the proper construction of section 2227 of the Code, which is as follows:

"Where colored persons prior to the twenty-seventh day of February, eighteen hundred and sixty-six, agreed to occupy the relation to each other of husband and wife, and were cohabiting together as such at that date, whether the rites of marriage had been celebrated between them or not, they shall be deemed husband and wife, and be entitled to the rights and privileges, and subject to the duties and obligations of that relation in like manner, as if they had lawfully married; and all their children shall be deemed legitimate, whether born before or after

said date. And where the parties had ceased to cohabit before the twenty-seventh day of February, eighteen hundred and sixty-six, in consequence of the death of the woman, or from any other cause, all the children of the woman, recognized by the man to be his, shall be deemed legitimate."

Several cases have arisen under this section, but only one of them will throw any light upon the point under consideration, and that only as to the character of the proof requisite to show: that the parties are within the statute.

In *Francis* v. *Francis*, 31 Gratt. 283, Judge Staples, speaking for the court, says: "It has been very properly said it was not the intention of the Legislature to force upon persons the. relation of husband and wife against the consent of either. It must appear that they have agreed to occupy that relation. The fact that they have so agreed is, however, not always susceptible of direct proof. The courts must, in many cases, infer it from the circumstances. It is not necessary that the parties shall have expressly agreed to live together as husband and wife. The agreement or understanding may be implied, as in other cases, from their conduct and declarations. In the present case there is no positive proof of an express agreement of the appellant and appellee to occupy the relation to each other of husband and wife. But the circumstances tending to show an implied understanding of that sort are almost as satisfactory as the direct testimony of unimpeached witnesses to the fact. It appears that they lived together in the house of the appellant as early as the year 1852, and so continued down to November, 1868, when the appellant abandoned the appellee and intermarried with another woman. During that time the appellee gave birth to ten children—all of them by the appellant; never denied by him or questioned by any other person, so far as the record discloses, until, in 1868, the appellant, as a pretext, no doubt, for his contemplated abandonment, raised a question as to the paternity of a son then eleven years of age.

It further appears that the appellant for many years prior to 1866 recognized the appellee as his wife, spoke of her as such to persons with whom he had dealings or with whom he was acquainted; the children were treated by him as his own; and in every respect he conducted himself as if he had been the husband by the rites of matrimony duly solemnized."

It would seem from this extract that it was not the fruit of mere concubinage that the statute intended to render legitimate, but that the Legislature, recognizing the fact that slaves, while incapable of entering into a valid legal marriage, did live together as man and wife, performing toward each other the duties incident to that relation, so far as persons in their condition could do so, determined in the interest of morality and decency that the issue of such cohabitation should be deemed legitimate.

It is plain that the parties before us do not come within the provisions of the first clause of section 2227. The contention is that, as William Spencer and Sarah Ann cohabited before the 27th day of February, 1866, her child recognized by him to be his is to be deemed legitimate, because, it is insisted, that it comes within the very letter of the statute. · The parties had ceased to cohabit not by reason of the death of the woman who survived, married, and had children by another man, but by force of the words "from any other cause." If this construction be true, then William Spencer might have had children as the result of cohabitation with an indefinite number of women prior to the 27th day of February, 1866, all of whom had been rendered legitimate by the terms of the act. We cannot think that the Legislature ever intended such a result. It was not intended to render legitimate the fruit of indiscriminate intercourse between the sexes, nor of mere concubinage, though acknowledged to be his by the father. The second clause of the statute must be taken to refer to the issue of cohabitation under like condition to those set out in the antecedent clause of the

section, that is to say, as referring to a man and woman who had agreed to occupy the relation to each other of husband and wife on or before the 27th day of February, 1866, but as to whom the rites of marriage had not been celebrated.

The second clause of the section provides for the case in other respects identical with that described in the former clause, but where cohabitation had ceased before the 27th day of February, 1866, in consequence of the death of the woman or "from any other cause."

We shall not undertake to enumerate what conditions the phrase "any other cause" might be held to embrace. For the present, it is enough to say that while it is true William Spencer cohabited with Sarah Ann, that the plaintiff, Margaret Bingham, was recognized by him as the result of that intercourse, that her parents at one time contemplated occupying towards each other the relation of husband and wife, that purpose was mutually abandoned, Sarah Ann becoming the wife of another man, and William Spencer the husband of another woman, and that Margaret Bingham is not within the protection of the statute.

Upon the whole case we are of opinion that there is error in the decree of the Circuit Court for which it must be reversed, and this court will proceed to render such judgment as it should have entered.

*Reversed.*